IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN ESCARZAGA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOARD OF TRUSTEES OF COMMUNITY ) <br> COLLEGE DISTRICT NO. 508 d/b/a ) <br> CITY COLLEGES OF CHICAGO and ) <br> MICHAEL ROBERTS, in his individual ) <br> and official capacities, ) <br> ) <br> Defendants. ) | No. 15 C 2568 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Carmen Escarzaga, sues defendants, City Colleges of Chicago and Michael Roberts, for discrimination, hostile work environment harassment, and retaliation under 42 U.S.C. §§ 1981 and 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. This case is before the Court on defendants' motion to dismiss certain of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

According to the allegations of the complaint, plaintiff is a "Hispanic woman of Mexican ancestry" who worked as an instructor of cosmetology at Harry S. Truman College ("Truman College"), one of the City Colleges of Chicago (Am. Compl. ¶¶ 6-7, 16.) She was hired in 1993 as an "adult educator," but in April 2013, her position was changed to "part-time lecturer." (*Id.* ¶¶ 16-17.) Plaintiff learned of the change at an April 20, 2013 meeting with defendant Roberts, the Human Resources Director at Truman College, although Roberts told plaintiff that her pay

would remain the same. (*Id.* ¶ 25.) On April 23, 2013, plaintiff learned that her pay had in fact been reduced (contrary to what Roberts told her), the change took effect retroactively on April 8, and she had been overpaid. (*Id.* ¶¶ 23, 28.) She subsequently received letters informing her that she had been overpaid not just in April but for several months prior, beginning in January 2013, and the amount must be repaid with interest. (*Id.* ¶ 29.) On or about April 29, 2013, plaintiff was forced to sign an agreement to repay amounts she was allegedly overpaid, or face discharge. (*Id.* ¶ 34.)

Roberts and others allegedly harassed and embarrassed plaintiff by stating that she does not understand English, her education is lacking, and she incorrectly filled out her time sheets. (*Id.* ¶¶ 30-32.) Plaintiff does speak and understand English, although she speaks with a strong accent, but she was asked on numerous occasions, to her embarrassment, to confirm that she understood what was discussed with her in English. (*Id.* ¶¶ 31, 33.)

In August 2013, plaintiff filed a charge of discrimination that was forwarded to the Equal Employment Opportunity Commission ("EEOC"), in which she alleged discriminatory treatment and harassment based on ancestry, national origin, and disability due to her diabetes. (*Id.*, Ex. A.) Plaintiff was terminated at some point, but she does not say when or describe the circumstances,[1] other than to say that she was 63 years old at the time (*id.* ¶ 40) and to allege that the termination was "wrongful" (*id.* ¶¶ 1, 53-54, 60). She received a right to sue letter in January 2015. (*Id.*, Ex. B).

Plaintiff's complaint consists of general factual allegations followed by claims of civil rights violations in two counts. Count I, captioned as "Violation of Title VII," claims

---

[1] Defendants attach a copy of what is purportedly plaintiff's resignation letter, dated May 5, 2014, to their reply brief. The Court does not assume the truth of any facts contained in this letter or base any inferences on it; at the motion to dismiss stage, the Court can only consider the allegations of the complaint, documents that are attached to plaintiff's complaint or to which the complaint explicitly refers, and documents of which the Court can take judicial notice. *See Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011).

discrimination based on "ancestry/national origin, age and disability." (*Id.* ¶ 43; *see* ¶¶ 42-46.) Count II, captioned "Civil Rights Violations 42 U.S.C. § 1981 and 42 U.S.C. § 1983 (City Colleges of Chicago and Michael Roberts)," claims "discrimination against the [p]laintiff in violation of § 1981, which subjects her to discriminatory discipline and terms and conditions of employment by terminating her on the basis of her ancestry/national origin, disability and age" (*id.* ¶ 49) and violation of her equal protection rights pursuant to § 1983 (*id.* ¶ 52). The caption of the complaint names as a defendant "Michael Roberts, in his individual and official capacities." In her prayers for relief, plaintiff states that she seeks to be reinstated as an employee with a clean disciplinary record and to be compensated for lost wages and other damages.

## DISCUSSION

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a pleading that states a claim for relief must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). Stated differently, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Defendants move to dismiss plaintiff's wrongful termination claims under Title VII, her age and disability discrimination claims, and her § 1981 and § 1983 claims against Roberts in both his official and individual capacities.

## I. TITLE VII WRONGFUL TERMINATION

Defendants contend that plaintiff's Title VII wrongful termination claim should be dismissed because the EEOC charge she filed did not encompass that claim. Prior to filing suit, plaintiff filed an EEOC charge against the defendants and received a right to sue letter, but her charge did not allege that she had been terminated at all, wrongfully or otherwise. In her complaint, she alleges that her "employment with the City Colleges of Chicago was terminated" when she was "63 years old" (Am. Compl. ¶ 40), but the complaint contains no other facts bearing on the date, cause or other circumstances of her termination.

Before filing a federal lawsuit under Title VII, a plaintiff must file a charge of discrimination before the EEOC, or her suit is barred. *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007). "The test for determining whether an EEOC charge encompasses the claims in a complaint [is whether they] are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)). Stated slightly differently, the test is satisfied "if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.*

Defendants cite two cases—*Moore v. Vital Products, Inc.*, 641 F.3d 253, 257 (7th Cir. 2011), and *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-11 (7th Cir. 1992)—in support of

their argument that plaintiff's wrongful termination claim, nowhere mentioned or suggested in the EEOC charge, is not reasonably related to her charges of discriminatory treatment or harassment. These cases are on point, and plaintiff cites no cases in response, nor does she attempt to distinguish them other than to say that, unlike in *Moore* and *Rush*, "Escarzaga indicated in her EEOC claim that Defendant was threating [sic] to terminate her." (Resp. at 5.) However, the Court fails to see why this should be a distinguishing factor, at least in the absence of any citation to case law supporting the distinction. It is true that plaintiff states in the EEOC charge that Roberts threatened to terminate her if she did not repay amounts she was allegedly overpaid, but the complaint suggests that she was not actually terminated because of the amounts she had allegedly overpaid; rather, a natural reading of the complaint suggests that the matter of the overpayment was resolved by plaintiff's signing a repayment agreement. (Am. Compl. ¶ 34.)

In fact, plaintiff's complaint contains no facts shedding any light on the immediate circumstances surrounding her termination. Her most specific description of the matter appears in her response brief:

> Plaintiff's EEOC claim discusses (1) plaintiff being overpaid because of Defendants changing her position without notifying her in advance, (2) defendants cutting the plaintiff's pay without notice, (3) defendants changing the time sheets without informing her, and (4) threats of discharge if "overpayment" was not refunded to the school. Defendants' action towards plaintiff and the reduction of her job and continuous harassment alleged in the EEOC claim, resulted in plaintiff's wrongful termination.

(Resp. at 5.) Despite this attempted clarification, plaintiff's statement that defendants' discriminatory treatment and harassment "resulted" in her "wrongful termination" is vague and conclusory. Plaintiff provides no facts to illustrate how, when, why and by whom she was terminated. She never says, for example, that she was terminated because she failed to make any

5

repayment of the amounts she was allegedly overpaid. The Court is left to speculate as to precisely how her employment with Truman College ended.

To the extent plaintiff is making a discriminatory discharge claim that bears "a factual connection," *Jackson v. FBI*, No. 02 C 3957, 2007 WL 2492069, at *6 (N.D. Ill. Aug. 28, 2007), to the overpayment issue she describes in her EEOC charge and complaint (as if, for example, she was fired for failing to repay the money that she was allegedly overpaid), the Court disagrees with defendants that the claim is beyond the scope of plaintiff's EEOC charge. Such a claim would "reasonably grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500; *cf. Harden v. Bd. of Trs. E. Ill. Univ.*, No. 12-CV-2199, 2013 WL 6248500, at *2 (C.D. Ill. Dec. 2, 2013). To the extent plaintiff is claiming to have been discriminatorily discharged on any other grounds, even if the discharge was motivated by the same discriminatory animus that motivated the earlier disparate treatment and harassment, the Court agrees with defendants that plaintiff is asserting a separate act of discrimination as to which she has failed to exhaust her administrative remedies, under *Moore* and like cases. *See, e.g., Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 625-26 (N.D. Ill. 2011) (citing *Moore*). In either case, plaintiff's claim does not contain sufficient factual matter to meet the plausibility standard of *Twombly* and *Iqbal*. Defendant's motion is granted with respect to this claim, with leave to amend if plaintiff can state a wrongful termination claim that is within the scope of her EEOC charge because it is reasonably related to the overpayment issue she described in her complaint and response brief.

## II. "TITLE VII" AGE AND DISABILITY DISCRIMINATION

Defendants move to dismiss the age and disability discrimination claims that plaintiff purports to bring under Title VII. As defendants point out, Title VII prohibits discrimination

based on an "individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2, but not her age or disability. In response, plaintiff admits that Title VII does not apply to discrimination based on age or disability, but she argues that discrimination on those bases is nevertheless prohibited by other federal statutes, the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 623, and the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12132, and under federal notice pleading standards, plaintiff argues, it is of no consequence that the claims are incorrectly captioned.

Plaintiff is correct. She was not required to cite the correct statutes in her complaint; she was merely required to relate sufficient facts to state a plausible claim for relief under *Twombly* and *Iqbal*. As the Seventh Circuit has explained,

> A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether [the complaint meets the pleading standard articulated by the Supreme Court] . . . . A drafter who lacks a legal theory is likely to bungle the complaint (and the trial); you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.

*Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (internal citations omitted). Plaintiff's failure to cite the correct statutes provides no basis by itself for dismissing her age and disability discrimination claims.

However, as stated above, plaintiff's EEOC charge asserted only claims of national origin, ancestry and disability discrimination; it did not assert any claim of age discrimination, nor did the allegations within it reasonably put defendants or the EEOC on notice of age discrimination. The ADEA, like Title VII, requires exhaustion of administrative remedies before the EEOC before bringing a lawsuit. *See* 29 U.S.C.A. § 626; *Allen v. City of Chi.*, 828 F. Supp. 543, 557 (N.D. Ill. 1993). It is clear that plaintiff has failed to exhaust her administrative remedies for any age discrimination claim because her EEOC charge did not encompass any

7

such claim. *Siciliano v. Chi. Local 458-3M*, 946 F. Supp. 596, 600 (N.D. Ill. 1996) (EEOC charge of sex and disability discrimination did not exhaust age discrimination claim); *Hansboro v. Northwood Nursing Home, Inc.*, 832 F. Supp. 248, 252 (N.D. Ind. 1993) ("Numerous courts have dismissed complaints or granted summary judgment where the complaint alleged a different type of discrimination from the EEOC charge."). Thus, the motion to dismiss is granted as to plaintiff's ADEA claim, but denied as to her ADA claim.

### III.    SECTION 1981 AND 1983 CLAIMS

First, defendants move to dismiss any age or disability claims that plaintiff may assert under § 1981, as she appears to do in ¶ 49 of the complaint. Plaintiff makes a half-hearted attempt to argue that § 1981a permits disability claims, but, as defendants point out, § 1981a merely "details potential damages for civil rights violations generally" (Reply at 3); it does not provide a separate cause of action for disability discrimination, nor does it support any argument that § 1981 provides a cause of action for disability discrimination. It is axiomatic that § 1981 applies only to race discrimination. *See Vogel v. S. Bend Cmty. Sch. Corp.*, No. 3:11 CV 254, 2013 WL 2156483, at *1 (N.D. Ind. May 17, 2013). Plaintiff's age and disability discrimination claims are not cognizable under § 1981.

Intentional age and disability discrimination claims are cognizable under § 1983, but defendants argue that plaintiff fails to state either a § 1983 claim against Roberts in his official or individual capacity for intentional discrimination based on "ancestry/national origin, age and disability" in violation of her equal protection rights, or a race discrimination claim under § 1981.

## A. Official Capacity

Defendant argues that plaintiff fails to state a claim against Roberts in his official capacity because he is not an official with "final policymaking authority with regard to employment policies." (Mot. to Dismiss at 7.)

The same standards govern plaintiff's intentional discrimination claims under § 1981 and § 1983 and her Title VII claims. *Friedel v. City of Madison*, 832 F.2d 965, 971-72 (7th Cir. 1987). An individual sued in his official capacity under § 1983 and § 1981 can be held liable for intentional discrimination if he had "final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Whether a local government official has final policymaking authority is a question of state law. *Horwitz*, 260 F.3d at 619.

Plaintiff cites the Illinois Public Community College Act, which empowers the board of trustees of any community college district to "[t]o employ such personnel as may be needed, to ***establish policies governing their employment and dismissal***, and to fix the amount of their compensation." 110 Ill. Comp. Stat. Ann. 805/3-42 (emphasis added); *see* 110 Ill. Comp. Stat. Ann. 805/3-30 ("The board of any community college district has the powers enumerated in Sections 3-31 through 3-43 of this Act."). Michael Roberts was a human resources director at Truman College, not a member of the board of trustees. As such, defendants argue, he did not have final policymaking authority with respect to employment matters. *See McFadden v. Chicago Pub. Sch.*, No. 11 C 7555, 2012 WL 2459161, at *2-3 (N.D. Ill. June 27, 2012). Plaintiff makes no serious response to this argument; she cites no legal authority in support of

9

her contention that Roberts was a final policymaker, and the only facts she cites bear only on whether he was personally involved in the actions that are the subject of this lawsuit, not on whether he had final policymaking authority as a matter of state law. The Court must agree with defendants that Roberts was not a final policymaker; therefore, plaintiff's official capacity claim against Roberts is dismissed.

B. **Individual Capacity**

Defendants move to dismiss plaintiff's claim against Roberts in his individual capacity because plaintiff only makes general allegations against the "defendants" and does not allege that Roberts personally participated in the alleged improper conduct.

Plaintiff responds that she has alleged that Roberts was directly involved in effectuating plaintiff's alleged discriminatory demotion, and he personally "commented on her understanding of the English language, ability to perform tasks and lack of educational background." (Resp. at 5-6 (citing Am. Compl. ¶¶ 23-24, 30, 32-33).) Defendants insist that the allegations against Roberts are merely "generalized," and it is true that the paragraphs of the complaint under the heading "Count II: Civil Rights Violations 42 U.S.C. § 1981 and 42 U.S.C. § 1983" make only general allegations, but defendants ignore that plaintiff expressly "incorporates and re-alleges" all the preceding paragraphs "as if fully set forth" within Count II. (Am. Compl. ¶ 47.) Plaintiff has sufficiently alleged that Roberts personally participated in the improper conduct to state a valid civil rights claim against him in his individual capacity.

Defendants also argue that plaintiff's § 1981 and § 1983 claims against Roberts must be dismissed because he has not been served in his individual capacity. Plaintiff has filed a waiver of service as to Roberts that names the party waiving service as "Michael Roberts, official capacity," and is signed by one Valerie Harper at 226 W. Jackson, Chicago, Illinois, the same

person who waived service on behalf of the board of trustees of the City Colleges of Chicago. Defendant Roberts has apparently not been personally served in this matter, and he must be personally served if plaintiff intends to sue him in his individual capacity, regardless of whether he has actual notice of the lawsuit. *See Holiday v. City of Chi.*, No. 05 C 4514, 2006 WL 2853595, at *4-5 (N.D. Ill. Sept. 29, 2006); *Saniat v. City of Chi.*, No. 96 C 5191, 1998 WL 748399, at *5 (N.D. Ill. Oct. 22, 1998); *see also Del Raine v. Carlson*, 826 F.2d 698, 704 (7th Cir. 1987) (plaintiff must serve *Bivens* defendant personally to sue him in his individual capacity). The § 1981 and § 1983 claims against Roberts in his individual capacity are dismissed.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' motion to dismiss [15]. Plaintiff's Title VII wrongful termination claim is dismissed without prejudice to refiling if plaintiff can state a claim that is reasonably related to the overpayment issue she described in her EEOC charge. Plaintiff's § 1981 and § 1983 claims against defendant Roberts in his individual capacity are dismissed without prejudice for lack of service. Plaintiff's ADEA age discrimination claim, her § 1983 and § 1981 claims against defendant Roberts in his official capacity, and her § 1981 age and disability discrimination claims are dismissed with prejudice. The motion is denied as to her ADA disability discrimination claim. Status hearing remains set for 1/13/16 at 9:30 a.m.

**SO ORDERED.**

ENTERED: October 23, 2015

_____
**HON. JORGE L. ALONSO**
**United States District Judge**