UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH ESCARZAGA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 C 2568 |
| | ) | |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| BOARD OF TRUSTEES OF | ) | |
| COMMUNITY COLLEGE | ) | |
| DISTRICT #508 d/b/a CITY | ) | |
| COLLEGES OF CHICAGO, and | ) | |
| MICHAEL ROBERTS, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Carmen Escarzaga ("plaintiff" or "Escarzaga")[1] filed against defendants Board of Trustees of Community College District #508 ("City Colleges of Chicago") and Michael Roberts an amended complaint asserting claims arising from her employment with City Colleges of Chicago. The Court previously dismissed all of plaintiff's claims against defendant Michael Roberts and some of plaintiff's claims (including a claim for age discrimination) against City Colleges of Chicago. [Docket 21]. Defendant City Colleges of Chicago moves for summary judgment on plaintiff's remaining claims. For the reasons set forth below, the Court grants defendant's motion [50] for summary judgment.

**I.   BACKGROUND**

The following facts are undisputed unless otherwise noted.[2]

---

[1] Carmen Escarzaga is deceased and has been replaced as plaintiff by her daughter, Elizabeth Escarzaga. The Court refers to Carmen as plaintiff for simplicity.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Where one party supports a fact with admissible evidence and the other party fails

Defendant City Colleges of Chicago operates Harry S. Truman College ("Truman College"), where plaintiff started working in 1991. Plaintiff, who was of Mexican descent, was a part-time employee in the Cosmetology Department, where she taught until May or June of 2014, when she retired.

Truman College offers students two types of classes: (1) courses for which a student could earn college credit ("credit courses"); and (2) continuing education courses ("non-credit courses"). Non-credit courses are taught by employees called adult educators. Credit courses are taught by either full-time employees called professors or part-time employees called adjuncts.

Truman College's instructors were represented by three different unions. The adult educators (i.e., the instructors of non-credit courses) are represented by the American Federation of State, County and Municipal Employees, Council 31, AFL-CIO and its Local 3506 ("AFSME"). Full-time professors are represented by the Local 1600 AFT, AFL-CIO, Chicago Illinois Faculty and Training Specialists. Finally, the part-time adjuncts are represented by the City Colleges Contingent Labor Organizing Committee—Illinois Education Association-National Education Association ("CCCLOC"). It is possible for an instructor to have more than one title, if, for example, she teaches both credit and non-credit courses.

---

to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Furthermore, the Court does not consider facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

In Truman College's Cosmetology Department, instructors taught credit courses. Thus, the full-time professors (who were also called "training specialists") were represented by Local 1600 AFT, AFL-CIO, while the part-time adjuncts were represented by CCCLOC.

An instructor's pay is determined by the applicable collective bargaining agreement. Under the CCCLOC collective bargaining agreement, part-time adjunct instructors are paid per student contact hour (which essentially means per 50-minute class period). The pay per contact hour is based, in part, on the instructor's educational background. Adult educators, on the other hand, are paid by the hour.

At some point during the first four months of 2013, plaintiff was given a contract as a part-time cosmetology adjunct. (The parties dispute whether that happened in January or April of 2013, but it does not matter when it happened.) Essentially, plaintiff's title was changed from adult educator to part-time adjunct. Plaintiff wondered why defendant was changing her title when she was "getting ready to retire." At the time of the switch, plaintiff's students were happy with her teaching and she was not subject to discipline.

The change in title had the effect of reducing plaintiff's pay. At some point in the first half of 2013, the payroll department ran an audit and determined that plaintiff had been overpaid. Specifically, plaintiff had been paid both as a part-time adjunct and as an adult educator. Defendant asked plaintiff to return the money, and she agreed to do so via payroll deduction. Plaintiff was not the only employee who was overpaid. Irene Bannister, who had been plaintiff's supervisor, was also overpaid. She, too, returned the money.

At times during her employment, plaintiff thought she was treated unfairly. Three or four years before she retired, plaintiff was passed over for a promotion and was denied an opportunity to attend a seminar. At some point, because she was going to miss two days of a summer class,

3

plaintiff was required to share the class with another instructor, which affected the total number of hours she worked.

In addition, plaintiff did not like some things that Michael Roberts ("Roberts") said to her. Roberts is (and was during 2013) the Human Resources Director at Truman College. Plaintiff was offended by comments Roberts made to her during meetings that took place in March, April and May of 2013. Specifically, Roberts said to plaintiff, "I do not understand you," "I am not understanding you, I will get a translator," and "I will call for an interpreter to make sure you are understanding me[.]" Roberts also said, "Do you understand me? Do you understand me?" Plaintiff testified that she spoke English "with a strong accent" and sometimes needed a translator for written English. Plaintiff's union representative translated for plaintiff during one meeting. Another thing plaintiff did not like was when Roberts said plaintiff "does not have the education to make that kind of money."

While she was working for defendant, plaintiff had diabetes. Plaintiff never told anyone at City Colleges of Chicago that she had diabetes. When plaintiff missed work for a few days, she told supervisor Irene Bannister only that she was sick. Plaintiff never asked for an accommodation for her diabetes.

City Colleges of Chicago maintains a non-discrimination policy. City Colleges of Chicago prohibits discrimination and harassment on the basis of age, race, color, national origin, ethnicity and disability. City Colleges of Chicago has an EEO Office that investigates complaints of discrimination from students, employees and anyone else involved in activities related to City Colleges of Chicago. The EEO Office also assists disabled employees with finding a reasonable accommodation.

On August 27, 2013, plaintiff filed with the Illinois Department of Human Rights a charge of discrimination, in which she alleged that, during the period of March 2013 through August 2013, she had been discriminated against on the basis of her national origin and disability and harassed on the basis of her national origin. She received a Right to Sue notice in March 2015 and timely filed her complaint in this Court.

## II.   STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.   DISCUSSION

In her amended complaint, plaintiff sets out two counts. In essence, though, she has five remaining claims. Plaintiff claims that she was discriminated against on the basis of her race/national origin in violation of Title VII of the Civil Rights Act of 1964 and in violation of § 1981. Plaintiff claims that she suffered harassment on the basis of her national origin in violation of Title VII. Plaintiff claims that she was discriminated against on the basis of her

5

disability in violation of the Americans with Disabilities Act ("ADA"). Finally, plaintiff seeks relief under § 1983 for violation of her constitutional right to equal protection of the law.

### A. Plaintiff's disparate treatment claims

Plaintiff argues that defendant violated Title VII and § 1981 when it demoted her, i.e., when it changed her title from adult educator to part-time adjunct, which change resulted in a pay cut. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a). Section 1981 guarantees a person the same right to "make and enforce" contracts "as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

The court uses the same standards to analyze both claims, so it will consider them together. *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017) ("We generally use the same standard to review discrimination and retaliation claims under § 1981 and Title VII[.]"). Ultimately, the Court must decide whether "'the evidence would permit a reasonable factfinder to conclude that the plaintiff's race [or national origin] . . . caused the [demotion].'" *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 808 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Where, as here, the record contains no direct evidence of discrimination, a plaintiff may take advantage of the *McDonnell Douglas* burden-shifting framework by first making out a *prima facie* case of discrimination. *McKinney*, 866 F.3d at 807. To make out a *prima facie* case of discrimination, a plaintiff must put forth evidence that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse

6

employment action; and (4) a similarly-situated employee outside of her protected class was treated more favorably. *McKinney*, 866 F.3d at 807. The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires plaintiff to show that she was "rejected under circumstances which give rise to an inference of unlawful discrimination," and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6.

Here, as defendant points out, plaintiff cannot make out a *prima facie* case of discrimination, because she has not shown that similarly-situated individuals outside of her protected class were treated more favorably. Plaintiff has put forth sufficient evidence of the first three elements. She has shown that her national origin is Mexico, so she is a member of a protected class. She has put forth evidence that her students enjoyed her class and that she was not subject to discipline, which suffices to show she was meeting her employer's expectations. It is undisputed that defendant changed her title to part-time adjunct, which reduced her pay (because she was subject to a different collective bargaining agreement). That is an adverse employment action.[3] Plaintiff has not, however, put forth any evidence of a similarly-situated instructor outside of her protected class who was treated more favorably. She has not, for example, named an instructor who was allowed to teach credit courses in the Cosmetology

---

[3] Plaintiff mentions other incidents but does not seem to be arguing that they were adverse employment actions. Specifically, plaintiff put evidence in the record that three or four years before she retired, she was passed over for promotion and denied an opportunity to attend a seminar. These incidents occurred more than 300 days before plaintiff filed her charge of discrimination, so they are time-barred. Plaintiff also put forth evidence that, because she was going to miss two days of a summer class, she was required to share the class with another instructor. Plaintiff has not put forth evidence of a similarly-situated instructor outside of her protected class who was allowed to miss days of summer class without having to share the class with another instructor. Thus, plaintiff could not survive summary judgment on such a claim, even if she were making one.

Department (or any other department for that matter) as an adult educator. Thus, plaintiff fails to make out a *prima facie* case of discrimination.

Even if she could, defendant has articulated a legitimate, non-discriminatory reason for the decision to change her title to part-time adjunct. Plaintiff's former title—adult educator—was a title given to instructors of *non-credit* courses. The courses plaintiff taught in the Cosmetology Department were credit courses, and part-time instructors of credit courses were titled part-time adjuncts.

Because defendant has articulated a legitimate, non-discriminatory reason for the title change, plaintiff has the burden to show that the stated reason was pretext for discrimination on the basis of her national origin or race. *McKinney*, 866 F.3d at 807 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)). A pretext is a dishonest explanation, rather than an error. *Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009). "It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personal management finds its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted); *see also Boston v. U.S. Steel Corp.*, 816 F.3d 455, 465 (7th Cir. 2016) (noting that the Seventh Circuit has long championed employers' rights to make their own decisions based on honest beliefs) (quoting *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 899 (7th Cir. 1999)). Plaintiff has put forth no evidence that suggests defendant's reason was dishonest. It is unclear why plaintiff had previously held the title of adult educator. Perhaps it was simply an error or perhaps the Cosmetology Department previously offered non-credit courses. Neither possibility, though, constitutes pretext for discrimination. Plaintiff argues that Roberts's comments about not understanding her and about

needing a translator show that the reason for the change was pretext for discrimination. The Court disagrees. It is undisputed that plaintiff sometimes needed a translator for written English, that she used her union representative as a translator at one meeting and that plaintiff, as she alleged in her complaint, spoke with a "strong accent." In this context, the Court fails to see how attempting to overcome a language barrier shows discriminatory animus.

In sum, no reasonable jury could conclude that defendant discriminated against plaintiff on the basis of her national origin or race when it changed her title to part-time adjunct, which reduced her pay.

### B. Plaintiff's harassment claim

Title VII also prohibits the creation of a hostile work environment, such that the work environment is "so pervaded by discrimination that the terms and conditions of employment [are] altered." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013) (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993)).

Where, as here, plaintiff seeks to establish a claim for national-origin harassment, a plaintiff must show: (1) that she was subjected to unwelcome harassment; (2) the harassment was based on her national origin; (3) the harassment was severe or pervasive such that it altered the terms and conditions of employment and created a hostile or abusive work environment; and (4) a basis for employer liability. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). In considering "whether a workplace is objectively hostile, we consider the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere's with an employee's work performance.'" *Alamo*, 864 F.3d at 549-550 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The question of employer liability turns on whether the

9

alleged harasser was a co-worker or a supervisor of the plaintiff. Where a co-worker harasses the plaintiff, an employer is liable only if it was negligent. *Faragher v. Boca Raton*, 524 U.S. 775, 789 (1998). Only if the alleged harasser is plaintiff's supervisor is it possible for the employer to be vicariously liable for the harassment. *Vance*, 570 U.S. at 428-30 (citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher*, 524 U.S. 775).

Here, plaintiff has put forth evidence that she was offended by comments Roberts made to her over the course of several meetings in March, April and May of 2013. Plaintiff did not appreciate it when Roberts asked her "Do you understand me? Do you understand me?" She also did not appreciate it when Roberts said, "I am not understanding you. I will get a translator" or when Roberts said "I do not understand you" and "I will call for an interpreter to make sure you are understanding me[.]" In addition, Roberts said that plaintiff "does not have the education to make that kind of money."

No reasonable jury could conclude that this constitutes actionable harassment on the basis of plaintiff's national origin. First, Roberts's comment about plaintiff not having "the education to make that kind of money" is not related to plaintiff's national origin. Nor could it be thought to be objectively hostile, given that plaintiff's pay was determined by a collective bargaining agreement, pursuant to which education was a factor in pay. As to Roberts's comments about not understanding plaintiff, his attempts to overcome a language barrier is not objectively offensive, particularly where, as here, plaintiff sometimes needed a translator and spoke with what she described in her complaint as a "strong accent." Perhaps plaintiff was offended because Roberts's tone was rude or abrupt (though there is no evidence of that), but, even if that were the case, the incidents would merely be offensive comments. The comments were not severe, they were not pervasive, they were not physically threatening and they did not alter the

conditions of her employment. Roberts's comments did not make plaintiff's workplace objectively hostile. Defendant is entitled to summary judgment on plaintiff's harassment claim. *See Akinbode v. Motorola*, Case No. 05 C 4600, 2007 WL 2316951 at *13 (N.D. Ill. Aug. 13, 2007) (comments about plaintiff's accent did not constitute actionable harassment).

### C. Plaintiff's ADA claim

The Americans with Disabilities Act ("ADA") makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on her claim that defendant discriminated against her on the basis of her alleged disability, plaintiff must show: (1) she is disabled; (2) she is qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014).

Here, plaintiff argues that she was demoted due to her disability. It is undisputed that plaintiff had diabetes. Although plaintiff has not put forth any evidence of how this affected her major life activities (or even stated what major life activity was substantially limited), the Court will assume without deciding that plaintiff was disabled. Defendant argues that it could not have discriminated against plaintiff on the basis of her disability, because it did not know she had diabetes. *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If the employer does not know of the disability, the employer is firing the employee 'because of' some other reason."). The Court agrees that the undisputed facts are that plaintiff

11

never told anyone at City Colleges of Chicago that she was diabetic. Plaintiff testified that when she missed a few days of work, she told her supervisor only that she was ill. Plaintiff testified that she never told anyone at City Colleges of Chicago that she was diabetic. Because defendant did not know about plaintiff's disability, her disability could not have been the reason why defendant switched plaintiff's title from adult educator to part-time adjunct.

Defendant is entitled to summary judgment on plaintiff's ADA claim.

### D. Plaintiff's § 1983 claim

Finally, plaintiff seeks relief against defendant City Colleges of Chicago under § 1983 for violation of her rights under the Equal Protection Clause. The Equal Protection Clause in the Fourteenth Amendment to the United States Constitution "protects individuals from governmental discrimination," typically on the basis of "race, national origin or sex." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013). In her complaint, plaintiff alleged that the termination of her employment violated her rights under the Equal Protection Clause. Defendant moved for summary judgment, because, among other things, plaintiff left her employment voluntarily by retiring. In response, plaintiff argues that defendant violated her right to Equal Protection of the laws when it demoted her and harassed her due to her national origin.

Plaintiff seeks to hold defendant liable under *Monell v. Department of Soc. Serv. of N.Y.*, 436 U.S. 658 (1978), where the Supreme Court set out the circumstances under which a municipality could be liable under § 1983 for constitutional violations. A municipality cannot be held liable under § 1983 based on *respondeat superior* liability. *Monell*, 436 U.S. at 691. Instead, a municipality can be liable only if the injury was the result of the municipality's policy or custom. *Monell*, 436 U.S. at 694. Plaintiff has not put forth any evidence of a municipal policy to treat individuals from Mexico differently and has not put forth any evidence of how

12

other individuals from Mexico were treated. Plaintiff argues that the treatment she experienced is evidence of a "widespread practice," but no reasonable jury could conclude that defendant had a custom of discrimination based on the few incidents plaintiff experienced, even if those incidents had amounted to constitutional violations, which they did not.

Plaintiff's claim for relief under § 1983 also fails, because the Court has already ruled that defendant did not discriminate against plaintiff on the basis of her national origin or race when it demoted her and did not subject plaintiff to national-origin harassment. Without an underlying violation of plaintiff's constitutional rights, there is no basis for holding the municipality liable. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *White v. City of Chi.*, 829 F.3d 837, 844 (7th Cir. 2016) (affirming dismissal of *Monell* claim where plaintiff "did not suffer a constitutional injury, which is a necessary element of a *Monell* claim").

Defendant is entitled to summary judgment on plaintiff's § 1983 claim.

### IV.     CONCLUSION

For the reasons set forth above, the Court grants defendant's motion [50] for summary judgment. Defendant is granted summary judgment on plaintiff's remaining claims under Title VII (disparate treatment and harassment), the ADA, § 1981 and § 1983. Civil case terminated.

**SO ORDERED.**                                                    **ENTERED:**   June 5, 2018

```
                                         _____
                                         JORGE L. ALONSO
                                         United States District Judge
```